**In re ATLAS FIRE APPARATUS, INC., a/k/a Atlas Steel Products, Inc., ID#: 56–0680361, Debtor.**

**ATLAS FIRE APPARATUS, INC., a/k/a Atlas Steel Products, Inc., Plaintiff,**

**v.**

**E.M. BEAVER, Patty Beaver Foscue, William M. Beaver, W.B. Beaver, E.R. Dimmette, Sr., E.R. Dimmette, Jr., Cindy D. Heath, Lillian B. Dimmette, and B & D Development Company, A North Carolina Partnership, Defendants.**

No. S–84–00716–5.
Adv. No. S–85–0150–AP.

United States Bankruptcy Court,
E.D. North Carolina.

Jan. 21, 1986.

Samuel T. Wyrick, Haythe & Curley, Raleigh, N.C., for debtor.

James C. Frenzel, Womble, Carlyle, Sandridge & Rice, Winston-Salem, N.C., for defendants.

## MEMORANDUM OPINION AND ORDER

A. THOMAS SMALL, Bankruptcy Judge.

The matter before the court is the Motion to Dismiss or, In the Alternative, Motion For Abstention filed by the defendants, E.M. Beaver, Patty Beaver Foscue, William M. Beaver, W.B. Beaver, E.R. Dimmette, Sr., E.R. Dimmette, Jr., Cindy D. Heath, Lillian B. Dimmette, and B & D Development Company, a North Carolina General Partnership. The parties filed extensive briefs and a hearing was held in Raleigh, North Carolina on December 17, 1985.

The defendants contend that this adversary proceeding is not within the district court's jurisdiction because it is not a civil proceeding "arising under title 11, or arising in or related to" a case under title 11. The defendants next maintain that this proceeding is, at most, a related noncore proceeding and that the district court's jurisdiction over a related noncore proceeding arising under state law is unconstitutional. In the alternative, the defendants ask this court to either voluntarily abstain or to recommend that the district court withdraw its reference to the bankruptcy court.

The court concludes that this adversary proceeding comes within the district court's jurisdiction (28 U.S.C. § 1334(b) and (d)) and that this adversary proceeding is a core proceeding (28 U.S.C. § 157(b)(2)(A),

(K), and (O)). Having determined that this proceeding is a core proceeding, it is not necessary to reach the constitutional issue. The court also declines to voluntarily abstain or to recommend that the reference be withdrawn.

## Background

The plaintiff in this adversary proceeding filed a voluntary petition under chapter 11 of the Bankruptcy Code on May 2, 1984. A plan of liquidation was confirmed on August 29, 1985, and all tangible assets have been sold. This adversary proceeding and Adversary Proceeding No. S–83–0171–AP represent the only unresolved priority disputes regarding claims to the sale proceeds.

Essentially, this adversary proceeding seeks to avoid a deed of trust encumbering assets of the debtor's estate in the amount of $750,000. The deed of trust was given by the corporate debtor in favor of the defendants as part of a buyout of the defendants' shares of the debtor's stock. The real property has been sold and the proceeds are being held pending the outcome of this and a companion proceeding. The debtor's amended complaint includes seven causes of action.

The first cause of action alleges that execution of the note and deed of trust by the debtor in favor of the defendants did not comply with corporate formalities and that the acts of the debtor's management were *ultra vires* acts which render the note and deed of trust null and void. Specifically, count one alleges violations of N.C.GEN.STAT. §§ 55–63(a)(2)[1] and 55–18(a)(2)[2].

---

**1.** N.C.GEN.STAT. § 55–63(a)(2) says,

(a) The transactions of any meeting of shareholders, however called and with whatever notice, if any, are as valid as though had at a meeting duly held after regular call and notice, if:

. . . .

(2) A quorum is present either in person or by proxy and no objection to holding the meeting is made by anyone so present, and if, either before or after the meeting, each of the persons entitled to vote, not present in person or by proxy, signs a written waiver of notice,

or a consent to the holding of the meeting, or an approval of the action taken as shown by the minutes thereof. All such waivers, consents, or approvals shall be filed with the corporate records or made a part of the minutes of the meeting.

**2.** N.C.GEN.STAT. § 55–18(a)(2) says,

(a) No act of a corporation and no conveyance or transfer of real or personal property to or by a corporation shall be invalid by reason of the fact that the corporation was without capacity or power to do such act or to

The second cause of action alleges a breach of fiduciary obligation by the defendants as the debtor's majority stockholders and directors.

The third cause of action alleges violation of N.C.GEN.STAT. § 55–54 [3] in that the defendants caused the debtor to transfer assets to the detriment of the corporation.

The fourth cause of action alleges a violation of N.C.GEN.STAT. § 55–22 [4] in that the defendants caused the debtor to transfer assets without proper authorization from stockholders who were adversely affected by the transaction.

The fifth and seventh causes of action allege a fraudulent conveyance under state law pursuant to N.C.GEN.STAT. Chapter 39.

The sixth cause of action seeks equitable subordination of the deed of trust on the

grounds previously stated and for lack of consideration.

The defendants have filed a motion to dismiss the amended complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure (made applicable here by Bankruptcy Rule 7012(b)) on the ground that the bankruptcy court and the district court lack subject matter jurisdiction.

## Jurisdiction

The district court's jurisdiction in bankruptcy matters is set out in 28 U.S.C. § 1334. That section, although effective on July 10, 1984, subsequent to the filing of the debtor's chapter 11 case, is nevertheless applicable to this adversary proceeding. Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, § 115(a), 98 Stat. 333 (1984); *Creasy v.*

make or receive such conveyance or transfer, but such lack of capacity or power may be asserted:

....

(2) In an action by the corporation or by its receiver, trustee or other legal representative, or by its shareholders in a derivative suit, against the incumbent or former officers or directors of the corporation.

3. N.C.GEN.STAT. § 55–54 says,

Any shareholder who receives any redemptive or purchase price upon the redemption or purchase by a corporation of its shares or who receives any dividend or other withdrawal or distribution from the corporation, either at a time when the corporation is or thereby will be rendered unable to meet its obligations as they mature in the ordinary course of business, or when the shareholder has knowledge that such receipt diminishes assets of the corporation contrary to the provisions of this Chapter, shall be liable to the corporation for the amount so received, including the amount of any obligation to the corporation thereby released, but this liability is subject to the same limitation as to time and amount as is contained in subsections (d) and (m) of G.S. 55–32 with respect to the liability of directors. Any number of shareholders may be sued in the same action. (1955, c. 1371, s. 1.)

4. N.C.GEN.STAT. § 55–22 says,

(a) Subject to the provisions of subsection (b) hereof, except with the consent of the holders of a majority of all the shares outstanding, regardless of limitation on voting rights, other

than the shares held by the adversely interested party, a corporation shall not, directly or indirectly, make any loan of money or property to, or guarantee or otherwise secure the obligation of:

(1) Any directors or officers of the corporation; or

(2) Any corporation of which the officers and directors of the lending or securing corporation own more than fifty percent (50%) of the outstanding securities of any class; or

(3) Any dominant shareholder or any other corporation of which said shareholder is a dominant shareholder, unless that corporation is a subsidiary of the lending or securing corporation; or

(4) Any person upon the security of the shares of any corporation mentioned in subdivisions (2) and (3) of this subsection. A sale on credit in the ordinary course of business is not a loan within the meaning of this section.

(b) If all shareholders, regardless of limiation on voting rights, are adversely interested in the proposed loan, guaranty, or other form of security, such transaction may be entered into by the corporation only with the consent of all such shareholders.

(c) The provisions of this section do not apply to loans, guaranties, or other forms of security extended by banks, industrial banks, building and loan associations, land and loan associations, credit unions or insurance companies, or to loans permitted under any statute regulating any special class of corporations. (1955, c. 1371, s. 1; 1959, c. 1316, s. 6; 1961, c. 198; 1969, c. 751, s. 9.)

*Coleman Furniture Corp.*, 763 F.2d 656 (4th Cir.1985).

28 U.S.C. § 1334(a) and (b) provide that:
(a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.
(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

Subsections (a) and (b) of 28 U.S.C. § 1334 are taken verbatim from former 28 U.S.C. § 1471(a) and (b) which are described in the House Report for H.R. 8200 as follows:

> This is the broadest grant of jurisdiction to dispose of proceedings that arise in bankruptcy cases or under the bankruptcy code. Actions that formerly had to be tried in State court or in Federal district court, at great cost and delay to the estate, may now be tried in the bankruptcy courts. The idea of possession or consent as the sole bases for jurisdiction is eliminated. The bankruptcy court is given in personam jurisdiction as well as in rem jurisdiction to handle everything that arises in a bankruptcy case. H.R. Rep. No. 595; 95th Cong., 1st Sess. 445 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6400.
> Without question, Congress was concerned primarily with maintaining substantially the existing Bankruptcy Court scheme, while satisfying the Supreme Court's explicit prohibition against vesting Article III jurisdictional powers over the Bankruptcy laws in courts created under Article I. *Leake v. Chandler*, 54 B.R. 942, 946 (D.C.W.D. VA 1985).

The United States Court of Appeals for the Fourth Circuit recently held that an action brought by a chapter 7 trustee to determine the rights of an employee pension fund and to recover any excess funds as an asset of the debtor's estate "arises under title 11." *Creasy v. Coleman Furniture Corp.*, 763 F.2d 656, 660 (4th Cir.1985).

■ The language of 28 U.S.C. § 1334(b) is certainly broad enough to include a determination of the validity of a lien encumbering property of the estate and to include a determination of whether a claim or lien should be equitably subordinated.

■ The district court, pursuant to 28 U.S.C. § 1334(d), also has exclusive jurisdiction of "all of the property, wherever located, of the debtor as of the commencement of such case, and of the estate." This adversary proceeding involves a determination of claims concerning specific property of the estate over which the district court clearly has jurisdiction under 28 U.S.C. § 1334(d).

The defendants have also challenged the district court's jurisdiction with respect to "related proceedings" on constitutional grounds, but because this court determines that this is a core proceeding, it is not necessary to reach the constitutional issue.

Accordingly, the defendants' motion to dismiss for lack of subject matter jurisdiction should be denied.

**Core or Non-Core**

28 U.S.C. § 157(a) provides that,
> [e]ach district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district.

In the Eastern District of North Carolina, all such matters have been referred to the bankruptcy court by a general order of reference dated August 3, 1984.

What authority the bankruptcy court may exercise with respect to a proceeding will depend upon whether the proceeding is a "core proceeding" or a "noncore proceeding." The bankruptcy court may hear and determine all issues in core proceedings (28 U.S.C. § 157(b)(1); *Briden v. Foley*, 776 F.2d 379, 381 (1st Cir.1985); *In re Production Steel, Inc.*, 48 B.R. 841 (D.C.M.D. TN 1985); *Ram Construction Company, Inc.*

*v. Port Authority of Allegheny County,* 49 B.R. 363 (D.C.W.D. PA 1985)), but, in the absence of the consent of the parties, may only enter proposed findings which are subject to a *de novo* review by the district court in proceedings which are "noncore" (28 U.S.C. § 157(c)). The determination of whether a proceeding is "core" or "noncore" is initially made by the bankruptcy court. 28 U.S.C. § 157(b)(3); *In re Lion Capital Group,* 48 B.R. 329 (D.C.S.D. N.Y.1985).

Since the enactment of the Bankruptcy Amendments and Federal Judgeship Act on July 10, 1984, many courts have attempted to ascertain the meaning of "core proceeding." The term is not defined, but 28 U.S.C. § 157(b)(2) provides fifteen nonexclusive categories of "core proceedings." Some courts have given "core proceeding" a narrow construction while others have taken a more expansive approach. Some of the cases which reflect a narrow view include *Mohawk Industries, Inc. v. Robinson Industries, Inc.,* 46 B.R. 464 (D.C.D. MA 1985); *In re Pierce,* 44 B.R. 601 (D.C.D. CO 1984); *In re Bokum Resources Corp.,* 49 B.R. 854 (Bankr.D.N.M.1985); *In re Nanodata Computer Corp.,* 52 B.R. 334 (Bankr.W.D.N.Y.1985); *In re TWI, Inc.,* 51 B.R. 470 (Bankr.E.D. VA 1985); *In re Morse Electric Co., Inc.,* 47 B.R. 234 (Bankr.N.D. IN 1985); *In re Shaford Companies, Inc.,* 52 B.R. 832 (Bankr.D.N.H. 1985); and *In re American Energy, Inc.,* 50 B.R. 175 (Bankr.D.N.D.1985). Support for a broad reading of "core proceeding" can be found in *In re Lion Capital Group,* 46 B.R. 850 (Bankr.S.D.N.Y.1985); *In re Pied Piper Casuals, Inc.,* 50 B.R. 549 (Bankr.S.D.N.Y.1985); *In re DeLorean Motor Co.,* 49 B.R. 900 (Bankr.E.D. MI 1985); and *Matter of Baldwin-United Corp.,* 48 B.R. 49 (Bankr.S.D. OH 1985).

█ This court is convinced that Congress intended "core proceeding" to be read as broadly as possible. The language of 28 U.S.C. § 157(b)(2)(O) says that a core proceeding includes,

other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims.

That language is extremely comprehensive, but the definition of core proceeding is nevertheless limited by the case of *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). The holding of *Marathon* is found in Justice Rehnquist's concurring opinion, the key passage being as follows:

From the record before us, the lawsuit in which Marathon was named defendant seeks damages for breach of contract, misrepresentation, and other counts which are the stuff of the traditional actions at common law tried by the courts at Westminster in 1789. There is apparently no federal rule of decision provided for any of the issues in the lawsuit; the claims of Northern arise entirely under state law. No method of adjudication is hinted, other than the traditional common law mode of judge and jury. The lawsuit is before the Bankruptcy Court only because the plaintiff has previously filed a petition for reorganization in that Court.

The cases dealing with the authority of Congress to create courts other than by use of its power under Art. III do not admit of easy synthesis. In the interval of nearly 150 years between *American Insurance Co. v. Canter,* 1 Pet. 511 [26 U.S. 511] 7 L.Ed. 242 (1828), and *Palmore v. United States,* 411 U.S. 389, 93 S.Ct. 1670, 36 L.Ed.2d 342 (1973), the Court addressed the question infrequently. I need not decide whether these cases in fact support a general proposition and three tidy exceptions, as the plurality believes, or whether instead they are but landmarks on a judicial 'darkling plain' where ignorant armies have clashed by night, as JUSTICE WHITE apparently believes them to be. None of the cases has gone so far as to sanction the type of adjudication to which Marathon will be subjected against its will under the provisions of the 1978 Act. To whatever extent different pow-

ers granted under that Act might be sustained under the 'public rights' doctrine of *Murray's Lessee v. Hoboken Land & Improvement Co.*, 18 How. 272 [59 U.S. 272] 15 L.Ed. 372 (1855), and succeeding cases, I am satisfied that the adjudication of Northern's lawsuit cannot be so sustained. 102 S.Ct. at 2881–82; *In re Shaford Companies, Inc.*, 52 B.R. 832, 835 (Bankr.D.N.H.1985). 1 L. King, *Collier on Bankruptcy*, ¶ 3.01, at 3–32 (15th ed. 1985).

The United States Court of Appeals for the Sixth Circuit has said,

[t]he thrust of the *Northern Pipeline* holding is that peripheral, non-traditional bankruptcy issues such as claims by the bankrupt against non-creditors cannot be adjudicated by a non-Art. III judge. *White Motor Corp. v. Citibank, N.A.*, 704 F.2d 254, 263 (6th Cir.1983).

This court has held, without discussion, that an action by a trustee or debtor in possession to collect an account receivable is a noncore proceeding. *In re Smith-Douglass, Inc.*, 43 B.R. 616 (Bankr.E.D.N. C.1984). The reason it is noncore is because an action to collect a contested account receivable is "similar in legal nature" to a breach of contract action which was the subject matter of *Marathon. In re Atlas Automation, Inc.*, 42 B.R. 246, 247 (Bankr.E.D. MI 1984). A suit to collect a prepetition account receivable is an *in personam* cause of action owned by a debtor at the time of the commencement of the case which became part of the estate under § 541 of the Code. Cf. 1 L. King, *Collier on Bankruptcy*, ¶ 3.01, at 3–27 (15th ed. 1985). *In re Northern Design, Inc.*, 53 B.R. 25 (Bankr.D. VT 1985). But also see the following cases to the contrary. *Matter of Baldwin-United Corp.*, 48 B.R. 49 (Bankr.S.D. OH 1985); *In re Franklin Computer Corp.*, 50 B.R. 620 (Bankr.E.D. PA 1985); *In re L.A. Clarke and Sons, Inc.*, 51 B.R. 31 (Bankr.D.D.C.1985); and *In re All American of Ashburn, Inc.*, 49 B.R. 926 (Bankr.N.D. GA 1985).

This court, however, has held that a determination of the validity of a lease termination for purposes of assumption under 11 U.S.C. § 365(a) is a core proceeding notwithstanding that the crucial issue is whether there has been a breach of contract and proper termination. It is a core proceeding because the determination, although utilizing state law, is integral to the determination of a federal question—may the lease be assumed under 11 U.S.C. § 365(a). *In re Nexus Communications, Inc.*, 55 B.R. 596 (Bankr.E.D.N.C.1985); *Moody v. Amoco Oil Co.*, 734 F.2d 1200 (7th Cir.1984); and *Seacoast Products Inc. v. Spring Valley Farms, Inc.*, 34 B.R. 379 (D.C.M.D.N.C.1983).

The defendants contend that because the plaintiff's causes of action turn on state law this adversary proceeding must be a noncore proceeding. Core proceedings, however, will frequently involve issues of state law. 28 U.S.C. § 157(b)(3) says that,

[a] determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State Law.

------

That core bankruptcy proceedings involve matters of federal right cannot seriously be questioned. As the plurality expressly noted in *Marathon*, 'bankruptcy adjudications themselves, as well as the manner in which the rights of debtors and creditors are adjusted, are matters of federal law.' [*Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S.] at 84, n. 36, 102 S.Ct. at 2878, n. 36. Nor is the federal character of a core bankruptcy proceeding changed by the fact that the substantive rights being adjusted are often created by state law. Congress made this explicit in the 1984 Act when it provided that 'A determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State Law.' 28 U.S.C. § 157(b)(3). *In re Tom Carter Enterprises, Inc.*, 44 B.R. 605, 609 (D.C.C.D. CA 1984).

A broad interpretation would include as a "core proceeding" a proceeding "clearly affecting" the bankruptcy estate. *In re De-Lorean Motor Co.*, 49 B.R. 900, 907

(Bankr.E.D. MI 1985). The proceeding before the court undoubtedly affects the debtor's estate—all that is left to be done in this case is to distribute sale proceeds and all that is delaying distribution is the determination of this and a companion adversary proceeding. Certainly this case would meet the "clearly affecting test," but we need not rely on such an expansive interpretation to find that the causes of action in this adversary proceeding constitute core proceedings.

■ Section 157(b)(2)(K) says that a core proceeding includes "determination of the validity, extent, or priority of liens." Bankruptcy courts have traditionally had summary jurisdiction to decide priorities of liens on property of the estate in the debtor's possession. 8 L. King, *Collier on Bankruptcy*, § 3.02 (14th ed. 1976). See also, H.R. Report No. 595, 95th Cong., 1st Sess. 44, U.S.Code Cong. & Admin.News 1978, p. 6005. If breach of contract and misrepresentation actions are "the stuff of the traditional actions at common law" (*Marathon*, 102 S.Ct. at 2881), determining the validity and priority of liens encumbering property of the estate is the stuff of traditional bankruptcy. Consequently, this adversary proceeding is a core proceeding. *Matter of Shell Materials, Inc.*, 50 B.R. 44 (Bankr.M.D. FL 1985); and *In re Yagow*, 53 B.R. 737, 740 (Bankr.D.N.D.1985).

■ Count six to equitably subordinate the lien is also a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A)—"matters concerning the administration of the estate." 1 L. King, *Collier on Bankruptcy*, ¶ 3.01, at 3–26 (15th ed. 1985); and *In re Osborne*, 42 B.R. 988 (D.C.W.D. WI 1984).

Counts five and seven which seek to avoid fraudulent conveyances under state law could also have been core proceedings under 28 U.S.C. § 157(b)(2)(H) if brought under 11 U.S.C. § 544(b). Core proceedings include "proceedings to determine, avoid, or recover fraudulent conveyances." The debtor in possession has the right pursuant to 11 U.S.C. § 544(b) to avoid fraudulent conveyances by using state fraudulent conveyance law. *Carlton v. BAWW, Inc.*, 751 F.2d 781 (5th Cir.1985); and *In re*

*Douthit*, 47 B.R. 428 (D.C.M.D. GA 1985). But see to the contrary: *In re Byrd*, 51 B.R. 645 (Bankr.S.D. OH 1985); and *In re TWI, Inc.*, 51 B.R. 470 (Bankr.E.D.Va 1985).

■ In counts five and seven, however, the debtor has neither referred to 11 U.S.C. § 544(b), nor alleged facts which would entitle it to proceed under that section. *Langella v. Weisz*, 39 B.R. 615, 618 (D.C.E.D. N.Y.1984). Nevertheless, counts five and seven are core proceedings, as already stated, because the real property encumbered by the deed of trust is property of the estate over which the court has jurisdiction. *Langella v. Weisz*, 39 B.R. 615, 618 (D.C.E. D.N.Y.1984).

**Abstention**

■ The defendants have requested that this court abstain from hearing this adversary proceeding. Mandatory abstention under 28 U.S.C. § 1334(c)(2) is not applicable because the case in which the adversary proceeding arises was filed prior to July 10, 1984 (Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, § 122(b) (1984)). Voluntary abstention, however, is available under 28 U.S.C. § 1334(c)(1) (effective July 10, 1984, Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, § 122(a)) which provides:

Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

■ This and other bankruptcy courts have voluntarily abstained in related noncore proceedings based on state law causes of action. *In re Smith-Douglass, Inc.*, 43 B.R. 616 (Bankr.E.D.N.C.1984); *In re Atlas Automation, Inc.*, 42 B.R. 246 (Bankr. E.D. MI 1984); and *In re Counts*, 54 B.R. 730 (Bankr.D. CO 1985). Abstention is especially appropriate in a noncore proceeding involving issues of state law when a party is entitled to a jury trial and the parties have not consented to jury trial by

the bankruptcy court. *In re Smith-Douglass, Inc.,* 43 B.R. 616 (Bankr.E.D.N.C. 1984); *In re American Energy, Inc.,* 50 B.R. 175 (Bankr.D.N.D.1985); and *In re Mauldin,* 52 B.R. 838 (Bankr.N.D. MS 1985).

If a jury trial were required, the bankruptcy court could conduct the jury trial and enter judgment because this is a core proceeding. 28 U.S.C. § 157(b)(1). *In re Boss-Linco Lines, Inc.,* 13 BCD 1028 (Bankr.W.D.N.Y.1985); *In re Blackman,* 13 BCD 1013 (Bankr.D.D.C.1985).

The defendants have demanded a jury trial, but they are not entitled to a jury trial, and their request will be denied.

■ 28 U.S.C. § 1480 (applicable to this proceeding because the debtor's case was filed prior to July 10, 1984; 28 U.S.C. § 1411(a) which was added by the Bankruptcy Amendments and Federal Judgeship Act of 1984 is not applicable to pending cases; Bankruptcy Amendments and Federal Judgeship Act of 1984 Pub.L. No. 98–353, § 122(b) (1984); *Creasy v. Coleman,* 763 F.2d 656, 660 (4th Cir.1985) ) says "that the right to a jury trial is preserved in proceedings arising in or related to bankruptcy cases where the right is 'provided by any statute in effect on September 30, 1979.' " The defendants would not have been entitled to a jury trial on the issues raised in this adversary proceeding under any statute in effect on September 30, 1979.

The United States Supreme Court held in *Katchen v. Landy,* 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966), that because proceedings over which bankruptcy courts had summary jurisdiction were inherently proceedings in equity, there was in such proceedings no right to a jury trial under the Seventh Amendment. Quoting from *Barton v. Barbour,* 14 Otto 126, 133–134, 104 U.S. 126, 133–134, 26 L.Ed. 672 (1881) the Court in *Katchen v. Landy* said

> So, in cases of bankruptcy, many incidental questions arise in the course of administering the bankrupt estate, which would ordinarily be pure cases at law, and in respect of their facts triable by jury, but, as belonging to the bankruptcy

proceedings, they become cases over which the bankruptcy court, which acts as a court of equity, exercises exclusive control. Thus a claim of debt or damages against the bankrupt is investigated by chancery methods. 382 U.S. at 337, 86 S.Ct. at 476.

Under the Bankruptcy Act of 1898, the bankruptcy court had summary jurisdiction to determine the validity of a lien on property of the estate within the debtor's possession and that determination was made without the right to a jury trial. There is also no right to a jury trial with respect to the equitable subordination of a claim, nor is there a right to a jury trial with respect to the avoidance of a fraudulent conveyance, even when the basis of the avoidance is the North Carolina fraudulent conveyance law. *In re Southern of Rocky Mount, Inc.,* 36 B.R. 175, 178 (Bankr.E.D. N.C.1983); 1 L. King, *Collier on Bankruptcy,* § 3.01, at 3–96 (15th ed. 1979). See also, *In re Fleming,* 8 B.R. 746 (Bankr. N.D. GA 1980); *In re Newman,* 14 B.R. 1014 (Bankr.S.D.N.Y.1981); *In re Mozer,* 10 B.R. 1002 (Bankr.D. CO 1981); *In re Professional Air Traffic Controllers Organization,* 23 B.R. 271 (D.C.D.D.C.1982); *Whitlock v. Hause,* 694 F.2d 861 (1st Cir. 1982); *Barber v. Kimbrell's, Inc.,* 577 F.2d 216 (4th Cir.1978), cert. denied, 439 U.S. 934, 99 S.Ct. 329, 58 L.Ed.2d 330; *In re Annexation Ordinances,* 253 N.C. 637, 117 S.E.2d 795 (1961); *Commissioners v. George,* 182 N.C. 414, 109 S.E. 77 (1921); 5 J. Moore, J. Lucas & J. Wicker, *Moore's Federal Practice,* ¶ 38.11[6] (2d ed. 1985).

■ Voluntary abstention is not appropriate in this core proceeding. *In re DeLorean Motor Co.,* 49 B.R. 900 (Bankr.E.D. MI 1985); *Matter of Baldwin-United Corp.,* 48 B.R. 49 (Bankr.S.D. OH 1985); *In re S.E. Hornsby & Sons Sand and Gravel Co., Inc.,* 45 B.R. 988 (Bankr.M.D. LA 1985); and *Ram Construction Co., Inc. v. Port Authority of Allegheny County,* 49 B.R. 363 (D.C.W.D. PA 1985).

**Withdrawal of Reference**

■ Simultaneously with the filing with this court of its motion to dismiss or to abstain, the defendants filed with the dis-

trict court a motion to withdraw reference. The defendants have asked the bankruptcy court to recommend to the district court that the reference be withdrawn. That decision, of course, is to be made by the district court (28 U.S.C. § 157(d)), but bankruptcy courts may recommend that a reference be withdrawn. The court, however, does not believe such a recommendation is justified in this proceeding. Accordingly,

IT IS HEREBY ORDERED that the defendants' motion to dismiss for lack of subject matter jurisdiction is DENIED; and

IT IS FURTHER ORDERED that the defendants' request for voluntary abstention of this core proceeding is DENIED; and

IT IS FURTHER ORDERED that the defendants' demand for jury trial is DENIED.