In re George F. STURM and Kathleen
A. Sturm, Debtors.

DeKALB MEDICAL BUILDING PART-
NERSHIP, A Partnership, Plaintiff,

v.

George F. STURM, Defendant.

Bankruptcy No. 85 B 20214.
Adv. No. 85 A 20149.

United States Bankruptcy Court,
N.D. Illinois, W.D.

Sept. 15, 1986.

Charles G. Brown, DeKalb, Ill., for plaintiff.

William E. Schirger, Rockford, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

RICHARD N. DeGUNTHER, Bankruptcy Judge.

This Adversary Complaint comes before the Court on the Motion of the DeKalb Medical Building Partnership (DMBP) to Dismiss the Counterclaim of the Debtor. DMBP is represented by Attorney Charles G. Brown. The Debtors are represented by Attorney William E. Schirger.

The Debtors in this case filed for relief under Chapter 11 of the Bankruptcy Code on February 21, 1985. DMBP filed a Complaint to Determine the Dischargeability of a Debt pursuant to Section 523(a)(2) of the Code. 11 U.S.C. Section 523(a)(2). The Complaint alleges that DMBP and Sturm Construction Industries, Inc. (Sturm Con- struction) entered into a contract to construct a building. The Debtor, George F. Sturm, was (and presumably still is) the President and principal stockholder of Sturm Construction. The contract provided that upon periodic application by Sturm Construction, DMBP would make payments for work completed on the building. The Complaint further alleges that Sturm Construction submitted false and fraudulent sworn affidavits of work completed to DMBP; that the affidavits, signed by George Sturm, requested payments for work not done, or work done by and to be paid directly to subcontractors; that DMBP paid Sturm Construction on the basis of the affidavits; and that because of the false and fraudulent affidavits, DMBP was required to spend $321,048.00 in excess of the agreed contract to complete the building. DMBP asks for a judgment that the debt is non-dischargeable and damages in the amount of $321,048.00.

The Debtor has filed a Counterclaim alleging that DMBP changed the terms of the contract after it was signed by George Sturm, as President of Sturm Construction. The Counterclaim also alleges that DMBP failed to make timely payments in breach of the contract, and because of the breach of the contract by DMBP, the Debtors were forced into bankruptcy. The Debtor requests damages in the amount of $184,-000. In Count II, the Debtor alleges that the actions of DMBP were "maliciously and tortiously based on malice towards the Plaintiff," and requests punitive damages of $500,000. Both parties request trial by a jury. DMBP has moved to dismiss the Counterclaim on the basis that the Debtor has failed to state a cause of action.

In order to rule on the Motion to Dismiss, the Court must first decide whether there is jurisdiction. 28 U.S.C. Section 157(b)(3); *In re Dr. C. Huff Company, Inc.,* 44 B.R. 129 (Bankr.W.D.Ky.1984). Original and exclusive jurisdiction for cases filed under title 11 and original but not exclusive jurisdiction of all civil proceedings arising under title 11 or related to a case under title 11 is in the District Court.

28 U.S.C. Section 1334. The District Court has the power to refer all bankruptcy matters to the Bankruptcy Court. 28 U.S.C. Section 157(a). The District Court for the Northern District of Illinois has provided a general reference to the Bankruptcy Court of all cases under title 11 and all civil proceedings arising under title 11 or related to a case under title 11. See, General Order, July 10, 1984. Under Section 157, the Bankruptcy Court may enter appropriate final orders and judgments in proceedings involving core matters. The Bankruptcy Court may hear a proceeding which involves a matter that is not considered a core proceeding, but otherwise is related to a bankruptcy case. However, when dealing with a related matter, the bankruptcy court can do no more than submit proposed findings of fact and conclusions of law for a de novo review by the District Court. 28 U.S.C. Section 157(c)(1). As an alternative, the District Court, with consent of the parties, may refer the case back to the Bankruptcy Court for a final disposition, subject to appeal. 28 U.S.C. Section 157(c)(2).

Section 157(b)(2) provides a non-exclusive list of matters which are core proceedings. However, in order to determine whether a matter before the Court is a core proceeding, Section 157(b)(2) must be read in conjunction with the Supreme Court case of *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982).

In *Northern Pipeline*, the Supreme Court found the Bankruptcy Code impermissibly granted the bankruptcy court jurisdiction to enter final orders and judgments in matters that only state courts or Article III Federal Courts could decide. To correct the constitutional infirmities of the Code, Congress created the present scheme of deciding matters which involve title 11. Unfortunately, the present scheme appears to offer little change other than in form and terminology, thus rendering it suspect to the same infirmities which brought about the decision in Northern Pipeline:

"Nor may Marathon [Northern Pipeline] be circumvented by device, such as 28 U.S.C. 157(b)(2)(h) providing for reference by an Article III judge. Does it not stand to reason that if a non-Article III judge cannot hear a matter, because of Marathon [Northern Pipeline], an Article III judge, then, cannot make a silk purse out of a sow's ear by the perfunctory act of assuming jurisdiction and then referring it to him who cannot try it in the first place."

*In re TWI, Incorporated*, 51 B.R. 470, 13 BCD 287 (Bkrtcy.E.D.Va.1985). Compare *In re Pied Piper Casuals, Inc.*, 50 B.R. 549, 13 BCD 290 (Bkrtcy.S.D.N.Y.1985).

In the case at bar, the underlying Complaint of DMBP requests that the Court find that a debt running from the Debtors to DMBP is nondischargeable under Section 523(a)(2). Generally, a Complaint to Determine the Dischargeability of a Debt is a core matter. 28 U.S.C. Section 157(b)(2)(I). However, in this case, the debt is not liquidated. To determine whether the debt is nondischargeable, this Court must first address the issue of whether there is a debt at all. To do so, there are several significant state law issues which must be resolved. The Court notes that the contract involved is between the corporation and DMBP. To hold the Debtors liable, the corporate entity must be disregarded. Additionally, Illinois law provides a comprehensive scheme for the payment of contractors and sub-contractors. The issue of dischargeability is a minor one in comparison to state law issues, and the facts which this Court would look to in determining dischargeability would certainly be developed in the litigation which determines liability on the claim. The question of liability is one which the state court is best suited to address. Thereafter, the question of dischargeability under Section 523(a)(2), should there be a finding of liability against the Debtor, is within the exclusive jurisdiction of the Bankruptcy Court. Section 523(c).

In *Northern Pipeline*, the debtor filed suit against defendant, Marathon Pipe Line Company. The suit was based upon state breach of contract, coercion and misrepre-

sentation claims. The Supreme Court found that "when Congress creates a statutory right, it clearly has the discretion, in defining that right, to create presumptions, or assign burdens of proof, or prescribe remedies; it may also provide that persons seeking to vindicate that right must do so before particularized tribunals created to perform the specialized adjudicative tasks related to that right. Such provisions do, in a sense, affect the exercise of judicial power, but they are also incidental to Congress' right that it has created. No comparable justification exists, however, when the right being adjudicated is not of Congressional creation. In such a situation, substantial inroads into functions that have traditionally been performed by the Judiciary cannot be characterized merely as incidental extensions of Congress' power to define rights that it has created." 458 U.S. at 83–84, 102 S.Ct. at 2878. The Supreme Court held that, as a Congressionally created court, non-Article III bankruptcy judges could not enter dispositive orders in matters primarily involving non-bankruptcy issues.

In *In re TWI, Inc.*, 51 B.R. 470 (Bankr.E.D.Va.1985), the trustee brought an action to set aside a preference and avoid a fraudulent transaction. The court found that an action to set aside a preference is a core matter. The rights of the parties are defined by federal law and enforced by federal law although some issues would involve state law, i.e., the existence of the debt. However, an action to avoid a fraudulent transfer is founded upon state law. The Bankruptcy Code gives the right to avoid the transfer to the trustee. The Bankruptcy Court, under *Northern Pipeline* is without jurisdiction to hear a matter based upon state law as a core proceeding, despite the grant of power in 28 U.S.C. Section 157(b)(2)(F). See also, *Mohawk Industries Inc., Robinson Industries, Inc.*, 46 B.R. 464 (D.Mass.1985).

In *In re American Energy, Inc.*, 50 B.R. 175 (Bankr.D.N.D.1985), the trustee brought an action for turnover pursuant to Section 542 of the Code. The action was based on a state law breach of contract. The bankruptcy court found that rights of the parties were defined by state law and Section 542 of the Code merely gave the trustee the right to bring the action. Therefore, the court found that it could not hear the matter as a core proceeding. See also, *In re Morse Electric Co., Inc.*, 47 B.R. 234 (Bankr.N.D.Ind.1985); *In re Pierce*, 44 B.R. 601 (D.Colo.1984); and, *In re Atlas Automation, Inc.*, 42 B.R. 246 (Bankr. E.D.Mich.1984).

▪ In the case at bar, DMBP brings an action (1) to determine whether there is a debt owing from the debtor to DMBP and (2) to determine whether that debt is an exception to the general rule that personal liability on debts is extinguished through bankruptcy. Whether there is a debt hinges solely on state law. Whether the debt is nondischargeable is based on federal law, which may look to state law for guidance. The Court is of the opinion that, with the exception of the ultimate issue of dischargeability, the Bankruptcy Court cannot try the issues presented here as a core proceeding.

Section 157(c)(1), 28 U.S.C., gives the bankruptcy court authority to hear non-core, related matters and submit proposed findings of fact and conclusions of law to the district court for a de novo review. Related matters are "those civil proceedings that, in the absence of a petition in bankruptcy, could have been brought in a district or state court...." *In re Colorado Energy Supply, Inc.*, 728 F.2d 1283 (10th Cir.1984). There must be some nexus between the bankruptcy case and the case before the Court for adjudication. *In re American Energy.* DMBP's claim is sufficiently connected to the bankruptcy case to be a related matter for the purposes of 28 U.S.C. Section 157(c).

▪ Jurisdiction for the Debtor's Counterclaim could lie with 28 U.S.C. Section 157(b)(2)(C), counterclaim by the estate against persons filing claims against the estate; Section 157(b)(2)(O), other proceedings affecting the liquidation of the assets of the estate; or, Section 157(b)(2)(I) as a counterclaim, i.e., pendant jurisdiction, to DMBP's non-dischargeability action. Like that of DMBP's, the Debtor's Counterclaim

sounds solely in state law. Jurisdiction may not flow to the bankruptcy court by way of counterclaim if it could not in the first instance. In order for Section 157(b) to confer jurisdiction upon the bankruptcy court, such grant must be constitutionally permissible. The Counterclaim of the Debtor is exactly like the claim of the debtor in *Northern Pipeline*. This Court, then, cannot take jurisdiction to render a final judgment on the matter just because the counterdefendant, DMBP, has filed a proof of claim; *In re Nanodata Computer Corp.*, 52 B.R. 334 (Bankr.W.D.N.Y.1985); or because the Debtor's Counterclaim affects the property of the estate; *In re Morse Electric; In re Atlas Automation.* Since the question of liability on the underlying debt in the non-dischargeability action of DMBP is not a core proceeding, the Court may not hear the Debtor's Counterclaim as a core proceeding under the theory of pendant jurisdiction. However, the Debtor's Counterclaim, by the definition in *In re Colorado Energy*, is a related matter.

■ Pursuant to Section 157(c)(1), the bankruptcy court may only hear a related case and submit proposed findings of fact and conclusions of law to the district court for a de novo review. However, both parties have requested trial by jury. To hold a jury trial in the bankruptcy court would result in inefficient administration of this case. *In re Morse Electric; Mohawk Industries, Inc. v. Robinson Industries.* Moreover, there presently rages a controversy over whether, and under what circumstances, a jury trial is available in bankruptcy court and whether the Non-Article III bankruptcy judge can hear it. *In re O'Bannon*, 49 B.R. 763 (Bankr.M.D.La. 1985); *In re McLouth*, 55 B.R. 357 (E.D. Mich, 1985); and *In the Matter of Hendon Pools of Michigan, Inc.*, 57 B.R. 801 (D.C.E.D.Mich, 1986). Therefore, pursuant to 28 U.S. Section 157(c)(1), this Memorandum Opinion shall constitute proposed findings of fact and conclusions of law to be certified to the District Court.

\* \* \* \* \* \*

■ Section 1334(c)(2), 28 U.S.C., provides for mandatory abstention under the preferred interpretation offered by District Judge Bua in *State Bank of Lombard vs. Chart House*, 46 B.R. 468 (N.D.Ill.1985). It would appear that mandatory abstention is not applicable here because no state court action has been commenced.

Section 1334(c)(1), 28 U.S.C., gives the district court the power to abstain from a "related" case in the interest of comity with state courts or respect for state law. The Court is of the opinion that this case is one in which Congress contemplated that the district court would consider voluntary abstention. *In re Sweeny*, 49 B.R. 1008 (N.D.Ill.1985).

On the basis of the foregoing:

1. The Bankruptcy Court should certify this Adversary Proceeding to the District Court for the Northern District of Illinois, Western Division, with these proposed findings of fact and conclusions of law for further proceedings; and

2. The Bankruptcy Court should recommend that the District Court, pursuant to 28 U.S.C. Section 1334(c)(1), abstain from hearing the Adversary Proceeding and Counterclaim.

IT IS SO ORDERED.